1
2
3
4
5
6
7
8                  UNITED STATES DISTRICT COURT

9                SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  SECURITIES AND EXCHANGE | Case No.:  14cv347-LAB  (BGS) |
| 12  COMMISSION, | |
|     Plaintiff, | **ORDER DENYING AS MOOT MOTION FOR EXTENSION OF** |
| 13 | |
| 14  v. | **TIME;** |
| 15  JAMES Y. LEE, et al., | **ORDER GRANTING MOTIONS TO EXCEED PAGE LIMITS;** |
|     Defendant. | |
| 16 | |
| 17 | **ORDER GRANTING MOTION FOR DISBURSEMENT OF** |
| 18 | **FUNDS;** |
| 19 | |
| 20 | **ORDER GRANTING IN PART MOTION TO FREEZE ASSETS;** |
| 21 | |
| 22 | **ORDER GRANTING MOTION FOR ORDER TO SHOW CAUSE;** |
| 23 | **AND** |
| 24 | |
|    | **ORDER OF REFERENCE** |
| 25 | |
| 26 | **[Docket numbers 162, 166, 168, 169, 174, 179.]** |
| 27 | |
| 28 | |

1

14cv347-LAB  (BGS)

**Motions Filed**

This is one of three related civil cases, the other two being 14cv542-BGS, *Ayers v. Lee*; and 14cv1737-LAB (BGS), *SEC v. Lee*. In a criminal case, *United States v. Lee*, 14cr2937-BEN, Defendant James Y. Lee pled guilty to obstruction of justice; specifically, he admitted engaging in false, fraudulent, and deceptive conduct to hinder the United States from collecting on the criminal judgment and executing the sentence imposed in an earlier case, *United States v. James Yiu Lee,* et al., 95cr41-MMC (N.D. Cal. 1995). On May 21, 2015 he was sentenced to 78 months' imprisonment plus three years' supervised release.

In this case, the Court entered judgment in favor of Plaintiff Securities and Exchange Commission (SEC), ordering Lee to pay $2,203,025.95 plus interest, and ordering and Relief Defendant Larissa Ettore ("Ettore") to pay $463,484.95 plus interest. The SEC has filed a motion representing that they both refuse to pay, and asking the Court to hold them in contempt. The motion also asks the Court to freeze all of Lee's and Ettore's assets and those held by certain third parties; requiring them both to provide the SEC with a full accounting of their assets; and requiring them to enter into installment payment orders with the SEC. (Docket no. 162.) A flurry of briefing from both sides followed. (*See* Docket nos. 163–86.)

In addition to moving for an order to show cause, the SEC moved for an order for disbursement of garnished funds (Docket no. 166), and an order freezing the assets of both Lee and Ettore. The SEC's motions were supported by numerous authenticated exhibits.

Lee's motion for extension of time to file a response to the SECs motion (Docket no. 168) is **DENIED AS MOOT**. Five days after filing it, he filed a response to the motion (Docket no. 172), which is accepted as filed.

/ / /

/ / /

1    Lee's and Ettore's motion (Docket no. 174) and the SEC's motion (Docket

2    no. 179) to exceed page limits are **GRANTED** and those documents are accepted

3    as filed.

4    **Discussion**

5    Lee by way of settlement consented to entry of judgment against him and

6    agreed to pay $2,203,025.95 plus interest. (Docket no. 80.)  He also consented to

7    the magistrate judge's retention of jurisdiction over his settlement agreement

8    (Docket no. 80-1), as did the SEC.  (Docket no. 80.)  On July 15, 2016, the Court

9    entered final judgment against him, and he did not appeal.

10   After a careful investigation, the Court granted the SEC's motion for

11   terminating sanctions against Ettore for her bad faith and willful misbehavior that

12   imposed unfair and unnecessary delays and costs on the SEC.  (Docket no. 101.)

13   Specifically, she failed to appear, then with a potential default judgment looming,

14   she made an appearance and, after asking for more time, represented that she

15   was ready to go forward. The Court, while finding her neglect of the case

16   inexcusable, denied default judgment. (Docket no. 65.)  After that, however, she

17   engaged in willful and bad faith obstructionist tactics. (Docket no. 101 (adopting

18   report and recommendation).)  The Court entered judgment against her as a

19   sanction. (Docket nos. 102, 103.)  She took an appeal, which she then abandoned,

20   and judgment became final on August 3, 2017.  (*See* Docket no. 107.) In sum, her

21   pattern of behavior has been to avoid disgorgement of ill-gotten gains by engaging

22   in a pattern of delay, obstruction, and bad faith.

23   These matters have already adjudicated, judgment is final, and there is no

24   reason to revisit them. To the extent Lee's and Ettore's briefing calls into question

25   any of the Court's earlier orders or findings, reconsideration is denied.

26   Because the Court has already ordered disgorgement, it is sitting in equity

27   here.  As such, it has broad discretion to fashion appropriate relief.  *See SEC v.*

28   *World Capital Market, Inc.,* 864 F.3d 996, 1003 (9th Cir. 2017) (citing 15 U.S.C.

§ 78u(d)(5) (authorizing any equitable relief that may be appropriate for the benefit of investors). *See also SEC v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1474 (2d Cir. 1996) ("Once the district court has found federal securities law violations, it has broad equitable power to fashion appropriate remedies.") This includes, for example, freezing assets even of non-parties. *See SEC v. Hickey*, 322 F.3d 1123, 1131–32 (9th Cir. 2003).

The usual rules of jurisdiction apply here. For example, a party or claimant— or a putative claimant—must establish standing. *See Watkins v. Peterson Enterprises, Inc.*, 57 F. Supp. 2d 1102, 111112 (E.D. Wash. 1999) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)) (holding that defendant, who was not a garnishee defendant, lacked standing to raise garnishee defendants due process rights). Personal jurisdiction is required as well, but only to the extent the Court is exercising *in personam* jurisdiction. Where the Court is exercising *in rem* jurisdiction, the Court need not obtain personal jurisdiction over non-parties, even if they might claim an interest in the property. *See United States v. Real Property*, 135 F.3d 1312, 1316–17 (9th Cir. 1998) (record owner of property over which the Court was exercising *in rem* jurisdiction had not joined as a party, and lacked standing to challenge forfeiture).

The SEC has presented substantial evidence. While Lee and Ettore have requested oral argument, they have not provided any evidence nor pointed to any they would like to present. But Lee and Ettore filed multiple documents in opposition to the SECs three motions, however (*see* Docket nos. 172, 173, 175, 176, 177, 184, 185), and to exceed the ordinary page limit. (*See* Docket nos. 174.) The Court finds they have had ample opportunity to make their arguments, and oral argument is not needed. *See* Civil Local Rule 7.1(d)(1).

**Motion for Disbursement of Funds**

Following judgment, the SEC obtained writs of garnishment, using them to garnish property held in four financial institutions. According to the motion, Ettore

was conducting business using three of her family members as Nominees: her mother Ulla Ettore, her father Roger Ettore, and her brother Timo Ettore. As discussed below, exhibits attached to the SECs motion for contempt show that Ettore and/or Lee were deeply involved in managing and controlling the Nominees accounts. The motion does not accuse the Nominees of any wrongdoing; it merely argues that they were in possession of funds to which they have no claim, which was fraudulently transferred into accounts held in their names.[1] *See World Capital Market*, 864 F.3d at 1003 (citing *SEC v. Ross*, 504 F.3d 1130, 1141 (9th Cir. 2007)) (identifying such persons as nominal defendants).

The financial institutions each answered the writs, saying that they held property in the name of one or more Nominees, but not Ettore. Other than this, the financial institutions have taken no position, and do not challenge the garnishment or any of the motions.

Although the individual Nominees were all given notice, they did not request a hearing, seek to exempt the funds, or object to the garnishment. None of the three sought leave to intervene, expressed any interest in claiming the property. Nor have they appeared in this action in any other way. Instead, counsel for Ettore and Lee filed an objection claiming to be preparing an objection on their behalf. (*See* Docket no. 173.) The objection itself only identifies Defense counsel as representing Ettore and Lee, however, not the three Nominees.1 Although the briefing is filed in both Lee's and Ettore's name, it does not identify the interest of

///

---

[1] The motion to freeze assets, by contrast, suggests that because the contempt motion put Ettore and lee on notice of the SEC's investigation, the Nominees and other third parties may be engaging in efforts to shield assets from collection. But this is only a suggestion, not an accusation. The SEC apparently has no information suggesting that the Nominees are deliberately working together with Ettore and Lee, as opposed to being mere pawns or dupes.

1 either as being at stake here, nor do they identify any injury they would suffer if the
2 funds were disbursed.

3    Ettore and Lee filed two more objections to the motion for disbursement of
4 funds, all purporting to be acting in the interest of the Nominees. (Docket nos. 175,
5 177.)  But the fact is, even though the Nominees were served and knew about the
6 Motion, they have never appeared either pro se or through counsel, and have
7 given no indication that they oppose the motion or are claiming the garnished
8 property.  In all three responses, counsel claim to be representing Ettore and Lee
9 only, and have never signed on behalf of or otherwise indicated they were actually
10 representing the Nominees. Only one of the Nominees Timo Ettore, was ever
11 named in any of the three related cases, and he was dismissed before making an
12 appearance.

13    The objections prove too much. Ettore and Lee deny the SECs charge that
14 the garnished property is actually their own and not in fact the Nominees.
15 Inexplicably, however, they are the only ones objecting. The Nominees whose
16 property they claim it is, appear to have no interest in it.  They have not retained
17 counsel or, it would appear, authorized Defense counsel to represent them in this
18 case. Nor have they appeared pro se or in any other way tried to assert a claim to
19 the garnished property.  Although their briefing makes a show of protecting the
20 Nominees due process and property rights, neither Ettore nor Lee have shown
21 they have standing to assert the Nominees' rights.  And if, as they claim, the
22 garnished property is not in fact theirs, they have no claim on it themselves. In
23 other words, the only way Ettore and Lee can have standing to object to
24 disbursement of the garnished funds is if they own them. But if they do, their
25 argument fails on the merits.

26    The only argument Ettore and Lee have raised in their objections is premised
27 on the contention that the funds belong to the Nominees; they deny that the funds
28 belong to them. Although they were given notice and an opportunity to be heard,

6

the Nominees have made no claim the funds. Although Ettore and Lee argue that the Nominees need the money to live on, that is the purpose of seeking an exemption.  Under Cal. Code Civ. Proc. §§ 703.520 and 703.030(a), a claimant's failure to file a claim of exemption within ten days after notice of levy on the property waives the exemption and the property is subject to enforcement of a money judgment.  While the Court can relieve a claimant of the failure to claim an exemption, nothing in the briefing suggests any reason to do so.  Even accepting, arguendo, Lee's and Ettore's argument that the Nominees are the real owners, the Nominees have waived their claims.

Lee's and Ettore's briefing also inaccurately characterizes the SEC's motions as indirectly seeking to hold the Nominees in contempt and punishing them by seizing their assets. In fact, the SEC's arguments characterize the Nominees as mere nominal account holders who were being used as pawns by Lee and Ettore, not as active participants or true owners.  The evidence bears out the SEC's characterization.

The SEC's exhibits show that Lee was trading in equities from prison using the Nominees' names and accounts, with Ettore's help.  Larissa  Ettore and/or Lee were opening accounts in the Nominees' names for their own benefit, and accessing the Nominees' accounts. The SEC's Exhibit 8 to the motion for order to show cause demonstrates the degree of control they were exercising over the Nominees accounts.  For example, Ettore emailed Lee in prison asking him, among other things, how Roger's mortgage modification and Optionshouse account applications should be filled out. (Ex. 8 at 135.)  She asks questions such as what income to list for him on the application, and what field to say he works in. (*Id.*)  She also asks Lee how much money she should be withdrawing daily from her joint account. In his responsive email, Lee asks her for the paperwork and advises her to withdraw $150 per day from her account.  (*Id.* at 136.)  Not long after, Lee emailed Ettore further instructions for modifying her parents' mortgage

in order to save money so they could build the account up with the balance transfers to [Optionshouse]. (*Id.* at 137.)  He also instructs her how much money to give her parents each month. (*Id.*) In later emails, Ettore updated Lee on the status of her investment accounts and he responds with advice; detailed instructions; and requests for spreadsheets, bank balances and account information, her parents' FICO scores, spreadsheets for Timo, and other financial documents and data consistent with management of her and her parents' finances. (*Id.* at 138–42, 145–48, 152, 154.) Among other things, in August of 2017 he said asked her to transfer $10,000 from a Wells Fargo joint account to a Wells Fargo personal account, and then to Bank of America. (*Id.* at 147–50.)  He engaged in similar email interchanges with Relief Defendant Lolita Gatchalian. (*Id.* at 143–44, 151.)

In these emails, Ettore refers to the two Wells Fargo accounts and the Bank of America account as "my bank balances," and the accounts as hers.  (Ex. 8 at 147–48.) Although more apropos of the motion for contempt, the exhibits also show she was not short of cash.  For instance, she was leasing a BMW until at least November of 2017 (Ex. 11) and sold a condominium for $240,000 in July of 2017. (Ex. 12.)

During this same time period, other documents show other substantial transfers and expenditures. (Exs. 13–14.)  She also held a joint Wells Fargo account with Ulla (Ex. 17) In short, the exhibits show Lee and Ettore exercising a high degree of control over passive Nominees and their accounts and investments. The tone and content of the communications show the Ettore was sending Lee the Nominees financial information, and that Lee was making decisions and feeding instructions to Ettore, who in turn carried them out.  There is no suggestion that the Nominees' involvement was required, or that their own preferences or interests played any important role.

/ / /

Lee and Ettore object to the emails' authenticity, but the Court finds that the declaration of Christy White adequately authenticates them. Because the emails are admissions of party opponents, they are not hearsay. As to this evidence, the objections are overruled.

The Court finds the SEC has shown that the garnished accounts were in effect the property of Lee and Ettore, even if they were nominally held in others' names. The Nominees have not claimed the funds or attempted to do so, and have waived any claim they might have. Lee and Ettore have no standing to raise claims or objections on their behalf. The motion to disburse the garnished funds is **GRANTED** and the Court will issue a separate order granting relief.

**Motion to Freeze Assets**

The Court's equitable powers include freezing the assets of parties and even non-parties who are dominated and controlled by a party against whom disgorgement has been ordered. *Hickey*, 322 F.3d at 1131–32. The SEC asks the Court to impose an asset freeze on Larissa Ettore and James Lee, and also on third parties they believe these two are using to hide or transfer funds. Those third parties are the Nominees named above (Ulla, Roger, and Timo Ettore), plus Lee's associate Relief Defendant Lolita Gatchalian, Lee's ex-wife Jean Lee, and any other entity through which they are acting. The motion correctly characterizes this as a broad freeze.

As with the motion to disburse funds, only Ettore and Lee have filed anything. They have no standing to object on behalf of others or to represent others' interests in this action. Nevertheless, when exercising its equitable powers, the Court considers whether granting the relief is necessary and fair. So the failure of the Nominees, Jean Lee, and Gatchalian have not filed an opposition does not by itself require the Court to grant the motion.

The SEC's evidence shows good reason to believe that Larissa Ettore and James Lee have been attempting to hide or transfer assets away from themselves,

14cv347-LAB  (BGS)

and freezing their assets—including any assets held in common with third parties, such as joint accounts—is very appropriate.

As for the others, however, the evidence is more speculative. The motion does not explain why—apart from the garnished accounts discussed above—there is reason to believe the three Nominees have received assets from Lee and Ettore, or if they have, that they would knowingly work in concert with them to dissipate or otherwise shield those assets. The available evidence suggests only that Ettore is controlling accounts to which their names are attached.

The motion for contempt offers some explanation as to the two other third parties, however. It points out evidence that Jean Lee is trading at Lee's direction, but the evidence does not clearly show she is trading with Lee's money. The evidence suggests she is executing trades on behalf of Lee and a third party identified by the pseudonym "TM," which the SEC believes is Tim Nguyen. But there is little to suggest that Jean herself is holding assets for Lee. If the SEC has evidence that Jean or "TM" (Tim Nguyen or anyone else) is holding assets for Lee, it can proceed directly against that person, or garnish that person's accounts. But at present there is little to suggest that freezing all of Jean's assets is necessary.

The argument for freezing Lolita Gatchalian's assets is stronger. She was one of the three relief defendants against whom terminating sanctions were issued, and there is evidence she was working with Lee after judgment was entered against him but before judgment was entered against her. But the SEC identifies no evidence she worked with him after that. She was ordered to disgorge $82,394.08, but has paid either all or nearly all that amount as ordered. The SEC has identified accounts Gatchalian holds, but has not garnished them, suggesting there is no evidence the assets really belong to Lee.

The SEC submitted a proposed order freezing assets, which differs substantially from the order it requested in the motion. The proposed order primarily directs third parties to retain any assets held "in the name of, for the

10

benefit of, or over which account authority is held by Defendant James Y. Lee and/or Larissa O. Ettore . . . ." The order is directed at third parties (including the Nominees, Gatchalian, and Jean Lee, as well as anyone else who has actual notice of it), but their only obligation concerns the assets of Lee and Ettore. In other words, the freeze contemplated in the proposed order is not the broad freeze the motion requested. Instead, it merely orders that Lee's and Ettore's assets be frozen.

The motion is **GRANTED IN PART**. James Lee's and Larissa Ettore's assets are ordered frozen. As to the assets of the others, the motion is **DENIED WITHOUT PREJUDICE**. But in the Court's view, the proposed order the SEC submitted is very nearly acceptable. The Court will sign and issue it separately, after some modification. The SEC may file a renewed motion seeking a broader freeze if more evidence comes to light. Any future motion to freeze assets is **REFERRED** to Magistrate Judge Bernard Skomal, or any other magistrate judge later assigned to this case.

**Motion for Order to Show Cause**

The SEC's motion is directed specifically at Larissa Ettore and James Lee, not the Nominees or any other third party even if named in a motion. It seeks an order to show cause why these two should not be held in contempt.

The Court's final orders of judgment against both Lee and Ettore included commands requiring their compliance. In addition to authority the SEC cites in its motion, this Court and all courts have the power to hold in contempt those who disobey their orders. *See Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 795–96 (1987) (quoting *Michaelson v. U.S. ex rel. Chicago, St. P., M. & O.R. Co.*, 266 U.S. 42, 65–66 (1924)). The Court's judgment against Ettore, it should also be noted, specifically provided that the SEC could move for contempt.

Lee and Ettore in their opposition treat the motion as if it were itself a motion for contempt, rather than a motion for an order to show cause. At this stage, the

SEC does not have to prove they committed contempt; it need only show that an order to show cause should issue. Furthermore, the Court itself can initiate contempt proceedings, if it believes they are warranted. *Young*, 481 U.S. at 793. Even if the SEC had not filed a motion or presented any evidence, the Court could *sua sponte* issue an order to show cause.

That being said, the Court finds the SEC has presented evidence strongly suggesting Lee and Ettore have contumaciously disobeyed the Court's orders to them. The SEC's motion (Docket no. 162) is therefore **GRANTED**. James Lee and Larissa Ettore are **ORDERED TO SHOW CAUSE** why they should not be held in contempt for disobeying the Court's orders to them. The substance of the accusations against them is set forth in the SEC's motion (Docket no. 162).

The issue of whether Lee and Ettore should be held in contempt is **REFERRED** to Magistrate Judge Bernard Skomal for a report and recommendation. He may, in his discretion, either treat the briefing as setting forth the parties' positions, or he may order additional briefing. Because it appears there are disputed issues of fact, and questions of credibility will need to be resolved, he should hold an evidentiary hearing. His report and recommendation should include his factual findings. Any related motions or requests, such as the SEC's request for an accounting, are also referred to him. He should resolve directly all matters that are within his authority to resolve, and the remainder should be included in a report and recommendation.

**IT IS SO ORDERED**.

Dated: February 20, 2019

Hon. Larry Alan Burns
Chief United States District Judge