UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Securities and Exchange Commission,<br><br>Plaintiff,<br><br>v.<br><br>James Y. Lee, et al.,<br><br>Defendants, | Case No.: 14-cv-347-LAB-BGS<br><br>**ORDER DENYING JUDGMENT DEBTORS' MOTION FOR RELIEF FROM THE ORDER FREEZING ASSETS**<br><br>**[ECF NO. 199]** |

## I. INTRODUCTION

Before the Court is Judgment Debtor James Y. Lee's ("Lee") and Judgment Debtor Larissa O. Ettore's ("Ettore") motion for release of frozen funds to pay counsel in connection with a pending civil contempt proceeding. (ECF No. 199.) Alternatively, Lee and Ettore (collectively the "Judgment Debtors") request counsel be appointed to represent them in the contempt proceeding free of charge. (*Id.* at 199-1 at 16–17.) The United States Securities and Exchange Commission ("SEC") opposes the motion. (ECF No. 200.) For the reasons set forth below, the request for release of frozen funds and the alternative request for appointment of counsel (ECF No. 199) are both **DENIED**.

## II. RELEVANT BACKGROUND

### A. Related Actions

This is one of three related civil cases pertaining to a fraudulent investment scheme orchestrated by Lee. In one related case, *SEC. v. Lee*, 14-cv-1737 (S.D. Cal), Lee was ordered to disgorge more than $2.8 million, plus prejudgment interest. (*SEC v. Lee*, 14-cv-1737 (S.D. Cal), ECF No. 14.) In another related case brought by defrauded investors and still pending, *Ayers v. Lee,* 14-cv-542 (S.D. Cal.), a default judgment exceeding $6.8 million was entered against Lee on March 3, 2017. (*Ayers v. Lee*, 14-cv-542 (S.D. Cal.), ECF Nos. 141, 143.) Ettore is the only remaining defendant in that ongoing action. (*See* docket.)

In addition to these civil actions, Lee pled guilty in a 2014 criminal case, *United States v. Lee*, 14-cr-2937 (S.D. Cal.), to obstructing justice and engaging in false, fraudulent and deceptive conduct to hinder the United States from collecting on a criminal judgment and restitution order stemming from a 1997 criminal conviction for wire fraud and embezzlement. (*United States v. Lee*, 14-cr-2937 (S.D. Cal.), ECF No. 8 at 3–6.) On May 21, 2015, Lee was sentenced to 78 months imprisonment plus three years supervised release. (*United States v. Lee*, 14-cr-2937 (S.D. Cal.), ECF No. 44.) He remains incarcerated.

### B. Judgments in This Action Against Lee and Ettore

In the instant action, on February 13, 2014 the SEC filed a complaint against Lee and Ettore alleging that Lee violated securities laws via a fraudulent investment scheme, and that Ettore as a relief defendant had payments from that scheme diverted to her. (ECF No. 1.) The Honorable Chief Judge Larry Alan Burns entered a consent judgment against Lee in which Lee stipulated that he:

> violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], Sections 17(a)(1) and (a)(2) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77q(a)(1) and (a)(2)], and Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6(1) and (2)] . . . .

(ECF No. 80 at 3; *see also* ECF No. 82.) As part of the consent judgment, Lee was ordered to pay disgorgement in the amount of $1,880,263 and prejudgment interest in the amount of $322,762.95. (ECF No. 82 at 4.)

Based on Ettore's obstructionist conduct during the litigation, terminating sanctions were entered against her. (ECF No. 101.) Chief Judge Burns determined that her conduct was her "own fault", "willful, and demonstrated bad faith." (*Id.* at 3–4 [Ettore's "bad faith and willful misbehavior [has] successfully delayed the SEC's recovery, and imposed costs on the SEC"].) Judgment was entered against Ettore on February 3, 2017. (ECF No. 103.) She was ordered to disgorge $386,694.25, together with prejudgment interest in the amount of $76,790.70, for a total of $463,484.95, plus post-judgment interest. (ECF No. 103 at 3, 5.)

**C. Contempt Proceedings**

On July 12, 2018, the SEC filed a Motion for Order to Show Cause why Lee and Ettore should not be held in civil contempt based on their failure to pay their ordered disgorgement despite their ability to do so. (ECF No. 162.) As part of this motion, the SEC also sought an order freezing all of Lee and Ettore's assets and those held by certain third parties, requiring them to provide the SEC with a full accounting of their assets and enter into installment payment orders with the SEC. (ECF Nos. 162-1 at 17–19; 166; 169.)

On February 20, 2019, the SEC's motion was granted and the issue of whether Lee and Ettore should be held in contempt, as well as any related motions or requests, was referred to this Court for a hearing and Report and Recommendation. (ECF No. 187.) On the same day, an Order Freezing Assets (ECF No. 188) and an Order to Disburse Garnished Funds (ECF No. 189) were also issued.

In the Order Freezing Assets, Chief Judge Burns noted that in the SEC's motion seeking a finding of contempt, it "submitted records showing how Lee and Ettore have been using third parties or nominees to conduct their personal and professional business so as to avoid the Commission's collection efforts," and ordered that:

> an immediate freeze shall be placed on all monies and assets including, but not limited to, those held by third parties or found in all accounts at any bank, financial institution or brokerage firm, of third-payment processor, all certificates of deposit, escrow or trust accounts, and other funds or assets held in the name of, for the benefit of, or over which account authority is held by Defendant James Y. Lee and/or Larissa O. Ettore, whether (1) held in their names or individual capacity; (2) controlled by them; (3) they have any beneficial interest; (4) held by any of their affiliates, correspondent entities, or nominees; and (5) they have any other interest, whether in the United States or abroad.

(ECF No. 188 at 2–3.) The Order Freezing Assets also specifically applied to the following third parties: Ulla Ettore, Roger Ettore, Timo Ettore, Lolita Gatchalian and Jean Lee. (*Id.* at 3.)

The Order to Disburse Garnished Funds directed several financial institutions to turn over certain funds to the SEC held in accounts owned by family members of Larissa Ettore, Ulla, Roger and Timo Ettore, for her benefit. (ECF No. 189.)

### D. Motion Requesting Relief from Asset Freeze

In a Joint Statement filed on May 7, 2019, Lee and Ettore's counsel advised the Court his clients intended to file a motion seeking relief from the asset freeze so that he could receive payment for his legal fees. (ECF No. 192.) Chief Judge Burns referred any such motion to this Court, authorizing Magistrate Judge Skomal to grant relief from the Court's order freezing assets. (ECF No. 193.) The instant motion and opposition followed.

In their motion, Lee and Ettore request relief from the asset freeze to use two of Ettore's credit cards to pay outstanding legal fees of approximately $12,140 and estimated future legal fees of $20,250. (ECF No. 199.) They provide no information as to how payments on the credit cards would be made. In the alternative, the Judgment Debtors request that the Court allow their current counsel to withdraw and have new counsel appointed pursuant to their Sixth Amendment right to counsel. The SEC opposes both requests. (ECF No. 200.) The parties' positions are discussed below.

### III. DISCUSSION

The Judgment Debtors' argument largely boils down to this: they claim that because

the civil contempt proceeding is criminal in nature, they have a Sixth Amendment right to counsel of their own choosing or to appointed counsel if they are unable to afford counsel of their choice. They argue that because of this right to counsel in the criminal context, the Court is required to be more permissive in unfreezing the requested assets than in other contexts. When as here the SEC has failed to demonstrate that Ettore's two credit cards are tainted or in any way traceable to criminal activities alleged in the complaint, they should be permitted to utilize them to pay counsel. The Judgment Debtors further claim that such a use of the two credit cards would not frustrate the purpose of the asset freeze order. (ECF No. 199-1.)

In its opposition, the SEC argues the Judgment Debtors have no Sixth Amendment right to counsel in a civil contempt proceeding. It refutes the Judgment Debtors' contention that because incarceration is an available remedy, the character of the contempt hearing changes from civil to criminal. It also points out that the Judgment Debtors cite no authority to support that argument.

Further, the SEC sets forth several factors courts consider when determining whether to release frozen assets to pay legal fees: (1) the likelihood that plaintiff will prevail on the merits; (2) whether defense counsel was aware of the possibility that the court might deny or limit attorney fees; (3) the availability of assets for consumer redress; (4) a defendant's access to alternative assets; and (5) the reasonableness of the funds requested for legal fees. It argues all factors cut in its favor and highlights that the Court has a special interest in maintaining the asset freeze to preserve assets that could be used to compensate the Judgment Debtors' victims. (ECF No. 200.) The parties' arguments are addressed below.

### A. Judgment Debtors Have No Sixth Amendment Right to Counsel in this Civil Contempt Proceeding

The Judgment Debtors argue they have a constitutional Sixth Amendment right to counsel in this civil contempt proceeding. (ECF No. 199-1 at 10–12.) They claim that because "the civil contempt action is criminal in nature, this proceeding is criminal." (*Id.*

at 11.)  They cite no authority for this conclusion.[1]

The Sixth Amendment provides that defendants shall enjoy the right to assistance of counsel in criminal cases. *See Gideon v Wainwright*, 372 U.S. 335, 344 (1963).  This same rule applies to criminal contempt proceedings.  *See United States v. Dixon*, 509 U.S. 688, 696 (1993) (citing *Cooke v. United States*, 267 U.S. 571, 537) (1925)).  However, it has been repeatedly held that the right to counsel does not generally extend to civil cases. *Turner v. Rogers*, 564 U.S. 431, 441 (2011) ("the Sixth Amendment does not govern civil cases"); *United States v. Sardone*, 94 F.3d 1233, 1236 (9th Cir. 1996) (collecting cases) ("it is well-established that there is generally no constitutional right to counsel in civil cases"); *FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 347 (9th Cir. 1989) ("The sixth amendment only gives defendants the right to counsel in criminal proceedings."); *see SEC v. Small Bus. Capital Corp.*, No. 5:12-CV-03237-EJD, 2012 WL 4472228, at *2 (N.D. Cal. Sept. 26, 2012) ("this matter has been raised in the civil context; thus, constitutional concerns going to the 'right to counsel' are largely inapplicable in this context"), *aff'd sub nom. SEC v. Feathers*, 774 F. App'x 354 (9th Cir. 2019), *amended in part*, 773 F. App'x 929 (9th Cir. 2019).

Courts have specifically rejected the argument that an asset freeze violates a civil defendant's Sixth Amendment right to counsel.  *See, e.g.*, *SEC v Current Fin. Servs.*, 62 F. Supp. 2d 66, 67 (D.D.C. 1999) (rejecting claim that asset freeze violated constitutional right to counsel in SEC action because "the Sixth Amendment provides defendants the right to counsel only in criminal, not civil, proceedings."); *FTC v. Kutzner*, No. SACV1600999BROAFMX, 2017 WL 2985397, at *6 (C.D. Cal. June 12, 2017) (holding

---

[1] The Judgment Debtors quote *In re Baca*, No. 1:08-CV-00396-LJO-DL, 2009 WL 1457691 (E.D. Cal. May 22, 2009) for the proposition that "a contempt hearing is quasi-criminal in nature." (ECF No. 199-1 at 11.)  This statement was made in reference to the heightened standard of proof required in a contempt hearing, not in reference to the applicability of the Sixth Amendment right to counsel.  Further, the order was issued prior to the Supreme Court's decision in *Turner v. Rogers*, 564 U.S. 431 (2011).

an action involving a civil contempt proceeding, "is not a criminal case; accordingly, the Sixth Amendment does not apply"), *aff'd sub nom. FTC v. Marshall*, No. 17-56476, 2019 WL 3202772 (9th Cir. July 16, 2019) (finding the district court did not abuse its discretion in holding defendant in civil contempt for withdrawing $24,500 from personal account to pay counsel in violation of asset freeze and that because defendant was not charged with a crime at the time he withdrew the funds, *Luis v. United States*, ___ U.S. ___, 136 S. Ct. 1083 (2016) did not apply); *Fed. Sav. & Loan Ins. Corp. v. Ferm*, 909 F.2d 372, 375 (9th Cir. 1990) (citing *United States v. Monsanto*, 491 U.S. 600, 616 (1989)) ("pretrial restraining orders which freeze assets, including funds which a defendant seeks to use to pay an attorney, do 'not 'arbitrarily' interfere with a defendant's 'fair opportunity' to retain counsel' and violate neither the fifth nor the sixth amendment").

Civil cases directly concerning a right to counsel have found a presumption of such a right "*only*" in cases involving incarceration, but have not held that a right to counsel exists in *all* such cases. *Turner*, 564 U.S. at 442–43 (discussing *In re Gault*, 387 U.S. 1, 35–42 (1967); *Vitek v. Jones*, 445 U.S. 480, 496–97 (1980); and *Lassiter v. Dep't of Soc. Servs. of Durham Cty.*, 452 U.S. 18 (1981)) ("an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty"). For example, in *Turner v. Rogers*, the Supreme Court held that the appointment of counsel is not automatically required during a civil contempt proceeding, "even if that individual faces incarceration." 564 U.S. at 448 ("[T]he Due Process Clause does not *automatically* require the provision of counsel at civil contempt proceedings to an indigent individual who is subject to a child support order, even if that individual faces incarceration (for up to a year)."); *see also Hicks v. Feiock*, 485 U.S. 624, 637–41 (1988) (establishing that the Fourteenth Amendment's Due Process Clause requires fewer procedural protections in a civil contempt proceeding than in a criminal case, even if a person's physical liberty is at stake).

The distinction between a civil contempt proceeding and a criminal contempt proceeding is the purpose of the sanction to be imposed. *Richmark Corp. v. Timber Falling*

*Consultants*, 959 F.2d 1468, 1481 (9th Cir. 1992), *see also Shillitani v United States*, 384 U.S. 364, 368–70 (1966), *Lasar v. Ford Motor Co.,* 399 F.3d 1101, 1110 (9th Cir. 2005) ("the Supreme Court has long distinguished criminal contempts from civil contempts by looking to the 'character and purpose' of the sentence."). Civil contempt seeks "'to coerc[e] the defendant to do' what a court had previously ordered him to do." *Turner*, 564 U.S. at 441 (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 442 (1911)). The sanction is "conditioned upon continued non-compliance." *Richmark Corp.*, 959 F.2d at 1481. Criminal contempt, on the other hand, seeks to "punish past conduct" and the sanction is "imposed for a definite amount or period without regard to the contemnor's future conduct." *Id.* Because "the justification for coercive imprisonment as applied to civil contempt depends upon the ability of the contemnor to comply with the court's order", *Shillitani*, 384 U.S. at 371, it is often said that in a civil contempt proceeding, the contemnors carry "the keys of their prison in their own pockets." *Id.* at 368; *see also Lasar*, 399 F.3d at 1110 (internal quotation marks omitted) (a "civil contemnor carries the keys of his prison in his own pocket because civil contempt is intended to be remedial by coercing the defendant to do what he had refused to do").

In the instant matter, the SEC is seeking a finding of civil contempt against the Judgment Debtors. As made clear in its opposition, the SEC requests an order requiring the Judgment Debtors to (1) provide an initial payment of at minimum $50,000 towards their disgorgement obligations; (2) enter into a payment plan; and (3) provide an accounting of their assets and income, including those attributed or controlled by them but in the name of a third party, within 30 days. (ECF No. 200 at 3.) It is only if the Judgment Debtors fail to comply that incarceration would become an available remedy intended to coerce compliance with the Court's order. Because the intent of the instant contempt proceeding is to coerce the Judgment Debtors' compliance with the disgorgement order, rather than punish them for their failure to do so thus far, it is a civil contempt proceeding. *See Turner*, 564 U.S. at 441 (contempt proceeding against father delinquent on child support payments was civil even though it could have led to his imprisonment for up to a

year); *Richmark Corp.*, 959 F.2d at 1481 ("If the sanction is intended to coerce the contemnor to comply with the court's orders in the future, and the sanction is conditioned upon continued noncompliance, it is civil."); *Shillitani*, 384 U.S. at 368–70. Notably, the SEC is *not* seeking an order of incarceration upon conclusion of the contempt proceeding.

For the foregoing reasons, this Court finds that the Judgment Debtors do not have a Sixth Amendment right to counsel. *See Turner,* 564 U.S. at 448 (no automatic right to counsel in civil contempt hearing); *Current Fin. Servs.*, 62 F. Supp. 2d at 67 (rejecting claim that asset freeze violated constitutional right to counsel in SEC action); *Kutzner*, 2017 WL 2985397 at *6 (because this is not a criminal case, the Sixth Amendment and holding of *Luis v. United States*, ___ U.S. ___, 136 S. Ct. 1083 (2016) are inapplicable); *Jump v. McNeil*, No. CV-04-0279-EFS, 2007 WL 9717356, at *3 (E.D. Wash. Sept. 27, 2007) ("Unlike a criminal proceeding, counsel is not required in a civil contempt proceeding" as the defendant "can purge himself at any time"). Accordingly, the Judgment Debtors have no Sixth Amendment right to counsel in this civil contempt proceeding and their request to have counsel appointed on that basis is **DENIED**.[2]

### B. Release of Frozen Assets for the Payment of Legal Fees Is Not Warranted

Next, the Judgment Debtors request that the Court unfreeze two of Ettore's credit cards to pay their attorney's fees. (ECF No. 199-1 at 12–17.) They acknowledge that it is within the district court's discretion to permit the payment of attorney's fees out of frozen assets. (*Id.* at 12 [citing *Commodity Futures Trading Comm'n v. Noble Metals Int'l, Inc.*,

---

[2] Although not raised by either party, the Court finds that given the type of sanctions sought by the SEC, the Judgment Debtors do not have a due process right to counsel at this point in the proceedings either. The Court intends to afford the Judgment Debtors the types of procedural safeguards (*i.e.* the opportunity for the Judgment Debtors to respond to statements and questions about their financial status and regarding their ability to pay) discussed in *Turner*, 564 U.S. at 445–48 (adequate notice of importance of ability to pay, fair opportunity to present, and to dispute relevant information and court findings) and according to *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (considering the fairness of an administrative proceeding).

67 F.3d 766, 775 (9th Cir. 1995) and *Fed. Sav. & Loan Ins. Corp. v. Ferm*, 909 F.2d 372, 374 (9th Cir. 1990)].) Additionally, they argue that in the criminal context, the Sixth Amendment right to counsel requires the court to be more permissive in unfreezing assets. (ECF No. 199-1 at 13.) While this is true, as discussed above this contempt proceeding is a civil proceeding, and thus the Sixth Amendment right to counsel does not apply. Accordingly, the Court does not have to be "more permissive" in this context as the Judgment Debtors argue.

Courts look at varying factors in determining whether to release frozen funds for legal fees. The Judgment Debtors argue the Court should look to (1) the reasonableness of the amount requested; (2) other available assets that could used for payment of the attorney's fees; and (3) the nature of the funds at issue. (ECF No. 199-1 at 13.) The SEC argues the Court should consider: "(1) the likelihood plaintiff will prevail on the merits; (2) whether defense counsel was aware of the possibility that the court might deny or limit attorney's fees; (3) the availability of assets for consumer redress; (4) a defendant's access to alternative assets; and (5) the reasonableness of the funds requested for legal fees . . . ." (ECF No. 200 at 5 [quoting *FTC v. Johnson*, 2011 WL 13249477, *2 (D. Nev. 2011) (noting the list is not exclusive as the relevant factors vary from case to case)].) It argues all factors support a denial of the Judgment Debtors' request.

The Ninth Circuit has repeatedly held that "[a] district court may, within its discretion, forbid or limit payment of attorney fees out of frozen assets." *Noble Metals*, 67 F.3d 766 at 775; *Ferm*, 909 F.2d at 375. "Courts regularly have frozen assets and denied attorney fees or limited the amount for attorney fees." *FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 347 (9th Cir. 1989). "These decisions recognized the importance of preserving the integrity of disputed assets to ensure that such assets are not squandered by one party to the potential detriment of another." *Ferm*, 909 F.2d at 374.

Depending on the nature of the case at issue, courts apply different standards when

assessing whether to unfreeze funds to pay for attorney's fees.[3] *SEC v. Santillo*, No. 18-CV-5491 (JGK), 2018 WL 3392881, at *4 (S.D.N.Y. July 11, 2018) (citing *SEC v. FTC Capital Markets, Inc.*, No. 09 CIV. 4755 (PGG), 2010 WL 2652405, at *6–7 (S.D.N.Y. June 30, 2010)). In a civil action, including enforcement actions brought by the SEC, a "defendant must establish that the funds he seeks to release are untainted and that there are sufficient funds to satisfy any disgorgement remedy that might be ordered in the event a violation is established." *Santillo*, 2018 WL 3392881, at *4 (quoting *SEC v. Stein*, No. 07 CIV. 3125GEL, 2009 WL 1181061, at *1 (S.D.N.Y. Apr. 30, 2009)).

Further, courts oftentimes look to the likelihood of success on the merits of the claims brought and balance the equities, which includes considering the availability of assets for consumer redress, the reasonableness of the fee request, whether defense counsel was aware of the possibility that fees might be denied or limited, and the defendant's access to alternative assets. *FTC v. Digital Altitude, LLC*, No. LACV1800729JAKMRWX, 2018 WL 4944419, at *7 (C.D. Cal. July 26, 2018) (citing *Noble Metals*, 67 F.3d at 775; *World Wide Factors*, 882 F.2d at 348; and *Johnson*, 2015 WL 9243920, at *2.

Critically, requests for the release of frozen assets to pay attorney's fees have been denied where the frozen assets fell short of a potential disgorgement order, regardless of whether the funds were tainted (*i.e.* traceable to illegal activity). *See, e.g.*, *Noble Metals*, 67 F.3d at 775 (fact frozen assets fell short of the amount needed to compensate defrauded

---

[3] In a criminal action, the Sixth Amendment right to counsel of choice requires courts to be more permissive in unfreezing assets. *See FTC Capital Mkts.*, 2010 WL 2652405, at *3, *7. Accordingly, if a criminal defendant can establish his assets are not traceable to fraud, then he may seek to unfreeze them for purposes of paying attorney's fees. *Id.*; *see SEC v. Coates*, No. 94 CIV. 5361 (KMW), 1994 WL 455558, at *3 (S.D.N.Y. Aug. 23, 1994); *see also Luis v. United States*, ___ U.S. ___, 136 S. Ct. 1083, 1088 (2016) (plurality opinion) (for a criminal defendant, the "pretrial restraint of legitimate, untainted assets needed to retain counsel of choice violates the Sixth Amendment"). Because this is a civil contempt proceeding, this more permissive standard does not apply. Instead, the standards for civil actions discussed above apply.

customers "was reason enough" to deny attorney's fees application); *SEC v. Current Fin. Servs.*, 62 F. Supp. 2d 66, 68 (D.D.C. 1999) (denying release of funds when funds available for disgorgement, traceable to illegally gotten gains or not, are grossly diminished so "that the potential disgorgement [the SEC] could receive . . . far exceeds the amount that is frozen."); *SEC v. Forte*, 598 F. Supp. 2d 689, 693 (E.D. Pa. 2009) ("because it appears likely that the investor losses dwarf Defendant's remaining assets, even if Defendant could show that some of the frozen funds are from 'untainted' sources, I would not release those funds."); *SEC v. Grossman*, 887 F. Supp. 649, 661 (S.D.N.Y. 1995) ("It is irrelevant whether the funds affected by the Asset Freeze are traceable to illegal activity . . . ."), *aff'd sub nom. SEC v. Estate of Hirshberg*, 101 F.3d 109 (2d Cir. 1996).

Considering the circumstances present here, the Court finds that a release of frozen assets to pay attorney's fees is not warranted. The "central purpose of an asset freeze is to preserve funds to satisfy a potential disgorgement order . . . ." *Santillo*, 2018 WL 3392881, at *3; *see Current Fin. Servs.*, 62 F. Supp. 2d at 68 ("It has been specifically recognized that a freeze of assets may be appropriate to assure compensation to those who are victims of a securities fraud."); *SEC v. ETS Payphones, Inc.*, 408 F.3d 727, 734–35 (11th Cir. 2005) ("the asset freeze is justified as a means of preserving funds for the equitable remedy of disgorgement"). Here, there is nothing "potential" about the disgorgement orders at issue; they have actually been entered against the Judgment Debtors. Because no accurate accounting has been performed, it is not clear whether the Judgment Debtors' frozen assets exceed the ordered disgorgement. The Judgment Debtors have provided no information regarding the status of their frozen assets. In such circumstances, use of the funds to pay for attorney's fees should be barred. *See Santillo,* 2018 WL 3392881, at *4 ("assets should remain frozen when the defendant has not demonstrated that there are sufficient frozen assets to pay disgorgement"); *Current Fin. Servs.*, 62 F. Supp. 2d at 68 ("frozen assets clearly do not exceed plaintiff's approximation of liability, and thus, the Court will continue the freeze order"); *SEC v. Bivona*, No. 16-CV-01386-EMC, 2016 WL 2996903, at *3 (N.D. Cal. May 25, 2016) (refusing to modify asset freeze to pay legal fees as

defendants had not provided "a complete picture of their finances"); *FTC Capital Markets*, 2010 WL 2652405, at *7 ("defendants have been barred from utilizing frozen assets to pay legal fees associated with representation in a civil action when it is not clear whether the frozen assets exceed the SEC's request for damages or disgorgement" (internal quotations omitted)); *Century—ML Cable Corp. v. Carrillo Diaz*, 43 F. Supp. 2d 166, 174 (D.P.R. 1998) (refusing to modify asset freeze because "Defendants have made no accounting or other showing that their assets were derived from legitimate conduct"); *In re Adelphia Commc'ns Corp.*, No. 02-41729 (REG), 2004 WL 2186582, at *13 (S.D.N.Y. Sept. 27, 2004) (court's refusal to modify an asset freeze, "in the face of the [defendants'] continued refusal to make full disclosure of their assets," was not an abuse of discretion).

Further, the Judgment Debtors' request to unfreeze assets to pay for attorney's fees constitutes a dissipation of assets, as these expenditures would deplete the assets available for investor redress. *See, e.g.*, *FTC v. World Patent Mktg., Inc.*, No. 17-CV-20848, 2017 WL 3508639, at *17 (S.D. Fla. Aug. 16, 2017) ("even absent an illicit movement of assets", a request to unfreeze assets to pay for legal fees constituted a "dissipation of assets" available for consumer redress); *FTC v. Triangle Media Corp.*, No. 18CV1388-MMA (NLS), 2018 WL 4051701, at *7 (S.D. Cal. Aug. 24, 2018) (where it was unlikely frozen assets would adequately redress consumer injuries, maintenance of the asset freeze was warranted), *aff'd sub nom. FTC v. Hardwire Interactive, Inc.*, 765 F. App'x 184 (9th Cir. 2019). Any frozen assets must be maintained to compensate the Judgment Debtors' victims. *See, e.g.*, *SEC v. Private Equity Mgmt. Grp., Inc.*, No. CV 09-2901 PSG (EX), 2009 WL 2058247, at *2–3 (C.D. Cal. July 9, 2009) (denying defendant's request to utilize frozen assets to pay attorney's fees in light of the "importance of preserving the integrity of disputed assets to ensure that such assets are not squandered by one party to the potential detriment of another"); *see also Ferm*, 909 F.2d at 374 (affirming district court's accounting order as it "protects already frozen assets from possible excessive dissipation due to unreasonable attorneys' fees"); *Grossman*, 887 F. Supp. at 661 (defendant "must establish that such a modification [of the asset freeze to pay attorney's fees] is in the interest

of the defrauded investors"); *SEC v. Petters*, No. 09-1750 ADM/JSM, 2010 WL 11561260, at *2 (D. Minn. Jan. 25, 2010) (denying request for reasonable living expenses when defendant had pleaded guilty to wire fraud because "the frozen assets should be used to compensate defrauded investors, and should not be depleted"). Such circumstances alone warrant the denial of the Judgment Debtors' motion.

However, in this case, there are numerous other factors that weigh against permitting the Judgment Debtors from utilizing frozen assets to pay attorney's fees. Significant judgments have already been entered against the Judgment Debtors that they have failed to pay. The SEC has submitted overwhelming evidence indicating the Judgment Debtors unwillingness to satisfy the judgments despite an apparent ability to do so. Based on evidence presented by the SEC thus far, it is likely that it will prevail in the civil contempt proceeding.[4] Indeed, Chief Judge Burns has already found that "the SEC has presented evidence strongly suggesting Lee and Ettore have contumaciously disobeyed the Court's orders to them," (ECF No. 187 at 12) and "show[ing] good reason to believe that [the Judgment Debtors] have been attempting to hide or transfer assets away from themselves, and freezing their assets—including any assets held in common with third parties, such as joint accounts—is very appropriate." (*Id.* at 9–10.) He found Ettore's "pattern of behavior has been to avoid disgorgement of ill-gotten gains by engaging in a pattern of delay, obstruction, and bad faith." and "exhibits attached to the SEC's motion for contempt show that Ettore and/or Lee were deeply involved in managing and controlling the Nominees accounts." (*Id.* at 3, 5.)

Further, even though judgment was entered against Ettore on February 3, 2017 (ECF No. 103), the SEC's exhibits show she was leasing a BMW until at least November 2017 and sold a condominium for $240,000 in July 2017 and used the profits to pay off credit

---

[4] It is worth noting that pursuant to the consent judgment entered against Lee and the terminating sanctions entered against Ettore in this matter, the SEC has already prevailed on its claims. (*See* ECF No. 80.)

14

14-cv-347-LAB-BGS

card bills. (ECF No. 187 at 8 [citing Exs. 11–12 of SEC's motion]; *see* ECF No. 162-3 at 159–68 [Ettore's BMW transaction statements and condominium sale documents].) Other substantial transfers and expenditures following the entry of judgment are documented as well. (ECF No. 187 at 8; [citing Ex. 13–14 of SEC's motion]; *see* ECF No. 162-3 at 169–88 [Ettore's bank account statements for August and November 2017, which show that in August 2017 alone, Ettore received over $50,000 in her checking account and paid out over $36,000].) As such, it is appropriate to prevent the dissipation of any assets available to pay the judgments. *See SEC v. Quinn*, 997 F.2d 287, 289 (7th Cir. 1993) ("Just as a bank robber cannot use the loot to wage the best defense money can buy, so a swindler in securities markets cannot use the victims' assets to hire counsel who will help him retain the gleanings of crime."(internal citations omitted)).

Critically, Lee and Ettore fail to address how Ettore plans to pay the credit card balances that would result from charging the requested legal fees to her credit cards. They have provided no information as to what funds would be used to make the necessary payments. This is especially significant in light of the fact that Lee admitted as part of his 2014 plea agreement to "us[ing] credit cards in the names of relatives to pay for expenses and pa[ying] the corresponding bills from his shell-corporation accounts" so as to hinder the United States' ability to collect on the criminal judgment and restitution order imposed as part of Lee's 1997 criminal conviction. (*United States v. Lee*, 14-cr-2937 (S.D. Cal), ECF No. 8 at 3–4.) Since all of Ettore's assets are frozen, she presumably would need a release of funds in order to make at least the minimum monthly payments to the credit cards. However, she requests no such release.[5] Without information about how payments would be made to the credit card balances, this Court declines to run the risk of letting history repeat itself. *See SEC v. Coates*, No. 94 CIV. 5361 (KMW), 1994 WL 455558, at *3 (S.D.N.Y. Aug. 23, 1994) ("A defendant is not entitled to foot his legal bill with funds

---

[5] The Judgment Debtors have not provided any information regarding how Ettore is paying for her living expenses. It is unknown if she is currently earning any income.

that are tainted by his fraud.").

Until a full accounting of Lee and Ettore's finances is complete, the Court does not have sufficient information to assess or parse the genuine sources of any of their assets, including sources of funds that would be used to make payments on debts incurred on Ettore's two credit cards.[6] To that extent, the request is at best premature, and at worst futile, given that there could be insufficient assets to cover the ordered disgorgement obligations entered against the Judgment Debtors.[7]

Additionally, the Judgment Debtors' counsel should have been aware that the Court could deny or limit access to frozen assets for the payment of attorney's fees since he agreed to represent the Judgment Debtors after the Commission filed its contempt papers and requested an asset freeze. (*See* ECF No. 200-1 at 1 [noting that the SEC is "asking for the imposition of a freeze order on all bank accounts and a forced payment plan", explaining the nature of a contempt proceeding, and including another retainer agreement

---

[6] Because the Judgment Debtors have not provided an accounting of their assets, the Court is not aware if they have access to alternative assets with which to pay their attorney's fees. However, the Court notes the evidence indicates that the Judgment Debtors have a history of controlling and utilizing assets held in the names of third parties for their own benefit. As other courts have remarked, "[p]erhaps, the Court would be in a better position to analyze [the defendant's] request if he provided it with an accounting." *Private Equity Mgmt. Grp.*, 2009 WL 2058247, at *3 n.1; *see also TransFirst Grp. Inc. v. Magliarditi*, No. 217CV00487APGVCF, 2017 WL 3723649, at *3 (D. Nev. Aug. 29, 2017) ("given the shenanigans surrounding the defendants' movement of funds and their failure to be forthcoming in post-judgment discovery . . . .I decline to allow a distribution for attorney's fees absent a more fulsome accounting of the assets to which [the defendant] actually has access.").

[7] Additionally, without an accounting, the Court cannot ascertain whether the Judgment Debtors have an actual need for the requested funds. Courts have refused to modify an asset freeze without evidence of actual need. *See, e.g.*, *Bivona*, 2016 WL 2996903, at *3–4; *Century—ML Cable Corp.*, 43 F. Supp. 2d at 174; *In re Adelphia Commc'ns Corp.*, 2004 WL 2186582, at *13; *SEC v. Cherif*, 933 F.2d 403, 416–17 (7th Cir. 1991) (affirming district court's refusal to modify injunction given the fact that a judge can draw an adverse inference from a defendant's refusal to submit an accounting in a civil proceeding and defendant refused to provide information about his assets).

for Judgment Debtors' review].)

Given the above, it is not necessary for the Court to reach the issue of the reasonableness of the requested attorney's fees. However, the requested fees, which include an estimate for future legal work, are unsupported at this juncture. *See Kerr v Screen Extras Guild*, 526 F.2d 67, 70 (9th Cir. 1975) (listing twelve factors courts look to determine whether a fee request is reasonable); *Johnson*, 2011 WL 13249477, at *4 (where party failed to attach a detailed spreadsheet of time spent and hourly descriptions with motion requesting release of frozen funds to pay attorney's fees, court "unwilling to approve" request); *see also Randles Films, LLC v. Quantum Releasing, LLC*, No. CV1003909SJOSSX, 2012 WL 13002173, at 3 (C.D. Cal. Feb. 27, 2012) ("For attorneys' fees to be set, the Court needs accurate and clear time sheets with enough information to discern how much time was spent on what types of tasks so that the Court can establish the reasonable number of hours expended on the litigation."). The Judgment Debtors have wholly failed to substantiate their request for attorney's fees with a detailed description of the complexity of the case, the skill and experience of counsel, the time and labor required, or any of the other factors discussed in the cited cases.[8]

Accordingly, for the reasons discussed above, the Judgment Debtors' request to release of frozen funds to pay counsel is **DENIED** at this time.

IV.   **CONCLUSION**

For the foregoing reasons, the Judgment Debtors' motion to release frozen assets to

---

[8] In support of the motion, the Judgment Debtors' counsel Matthew J. Faust submits a declaration purporting to provide a summary of the case log activity. However, he merely provides (1) the rates of the attorneys who have worked on the matter; (2) a high-level estimate of the Judgment Debtors' approximate balance for services rendered; and (3) an anticipated total number of hours he expects would be spent on the contempt matter. (ECF No. 199-2 at 1–2.) Critically, he fails to submit any billing records or any further detail about the time previously expended on this matter or expected to be expended before the conclusion of the contempt proceeding. (*See id.*) Additionally, Mr. Faust represents Ettore in another active civil case, and it is unclear if his requested historic fees are solely in relation to this matter.

pay counsel and in the alternative for the appointment of counsel (ECF No. 199) is **DENIED**.

**IT IS SO ORDERED.**

Dated: October 7, 2019

_____
Hon. Bernard G. Skomal
United States Magistrate Judge